IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MELVYN JARAMILLO and
DEBBIE JARAMILLO for themselves
and others similarly situated,

           Plaintiffs,

vs.                                            Civ. No.  10-1095 JCH/LFG

GOVERNMENT EMPLOYEES
INSURANCE COMPANY, GEICO
GENERAL INSURANCE COMPANY,
GEICO INDEMNITY COMPANY, and
GEICO CASUALTY COMPANY,

           Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on a *Motion for Summary Judgment*, filed on February 21, 2011, by Defendants Government Employees Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, and GEICO Casualty Company ("the GEICO Defendants") [Doc. 34]. The Court, having considered the motion, briefs, exhibits, and relevant law, and being otherwise fully informed, finds that the GEICO Defendants' motion should be GRANTED.

## BACKGROUND

This case calls upon the Court to analyze whether an apparent waiver of uninsured/underinsured ("UM/UIM") motorist coverage complied with New Mexico statutes and regulations governing such waivers, a topic of extensive litigation in several recent cases. The following facts are undisputed, unless otherwise noted.

On March 31, 2009, Plaintiffs Melvyn and Debbie Jaramillo ("the Jaramillos") purchased

an automobile insurance policy ("the Policy") from Defendant Government Employees Insurance Company ("GEICO"). The Policy was in effect on July 11, 2009, the day on which Mr. Jaramillo was involved in an automobile accident while driving one of his covered vehicles. The driver of the other vehicle involved in the accident is alleged to have been at fault, and is alleged to have been an underinsured motorist.[1] Following the July 11, 2009 accident, Plaintiffs sought UM/UIM benefits under the Policy, which GEICO denied.

The Policy insured four vehicles owned by the Jaramillos, each with liability coverage for bodily injury with limits in the amount of $50,000 per person/$100,000 per occurrence. As initially issued, the Policy provided for UM/UIM limits of $25,000 per person/$50,000 per occurrence on each of the Jaramillos' four vehicles.[2]

On March 31, 2009, the same day it issued the Policy, GEICO mailed out a New Business Packet to the Jaramillos. The packet included several items, including a copy of the Policy, a three-page Endorsement Declarations, and a blank New Mexico Uninsured/Underinsured Motorists Coverage Information and Selection Form ("Option Form"). On April 21, 2009, GEICO received a returned copy of the Option Form it had sent to the Jaramillos. The Option Form contained the printed name of "Debbie Jaramillo" and it was

---

[1] The driver of the other vehicle, Michael Atencio, and the person from whom he borrowed the vehicle, Sarah Patterson, were initially defendants in this action but were dismissed pursuant to a joint motion. *See* Doc. 40.

[2] Pursuant to a ruling by the New Mexico Supreme Court entered after the Policy was initially issued, a policy may not contain UM/UIM limits lower than bodily injury limits in the absence of a written rejection by the policyholder. *See Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050 at ¶ 15. The parties do not dispute that the Jaramillos did not initially file a written rejection. Thus, the Jaramillos' initial UM/UIM limits would have been incompatible with the *Weed Warrior* ruling. However, the issue in this case is whether the Jaramillos' later written rejection of all UM/UIM coverage was sufficient, not whether their initial UM/UIM limits were appropriate.

signed, although not dated. *See* Ex. A(2), attached to Doc. 35, at 1. The envelope containing the signed Option Form bears a date of April 4, 2009. *See* Ex. A(3), attached to Doc. 35.

      The Option Form signed by Ms. Jaramillo contains the following language in its heading:

> I have had Uninsured/Underinsured Motorist (UM/UIM) Coverage explained to me and I fully understand it.
>
> I also understand that my Uninsured/Underinsured Motorist Coverage election applies to this policy and all vehicles insured under this policy until I notify Government Employees Insurance Company/GEICO General Insurance Company, in writing, that I wish to change my election....If a box is not checked, I understand that UM/UIM Bodily Injury Coverage will be issued with limits equal to the Bodily Injury Limits of my policy, and my UM Property Damage Coverage will be issued with limits of $10,000 each accident.
>
> Any change to my Uninsured/Underinsured Motorist Coverage election shall be effective as of the date of the written notification being received and shall apply to all vehicles currently on the policy and to all vehicles added to the policy in the future.

Ex. A(2), attached to Doc. 35, at 1.

      Under that heading, the Option Form then provides two choices, both with check boxes next to them: the option to reject UM/UIM coverage, and the option to select UM/UIM coverage. The Option Form signed by Ms. Jaramillo contains a checkmark in the box beside the following option:

> I reject UM/UIM Bodily Injury Coverage and UM Property Damage Coverage. I have been offered Uninsured/Underinsured Motorist Coverage up to an amount equal to the limits of liability coverage and I reject the option to purchase any Uninsured/Underinsured Motorist Coverage. I understand that New Mexico law requires Government Employees Insurance Company/GEICO General Insurance Company to include Uninsured/Underinsured Motorist Coverage with each policy of automobile insurance sold in New Mexico. I understand that UM/UIM provides insurance for losses which I may incur if I am injured by a person who is not insured or who does not have enough insurance to compensate me for my injury. I understand that New Mexico law allows me to decide whether I want to keep the UM/UIM Coverage on my insurance policy. Based on my understanding, I choose to decline UM/UIM Coverage. I understand that until I inform Government Employees Insurance Company/GEICO General Insurance Company in writing that

> I wish to add UM/UIM Coverage to my insurance policy, no automobile insurance policy issued to me by Government Employees Insurance Company/GEICO General Insurance Company will provide coverage if I am injured or my property is damaged by an uninsured or underinsured motorist.

*Id*.

The Option Form also contains an option to select UM/UIM coverage, and the box next to that option was not checked. That option provides:

> I select UM/UIM Bodily Injury Coverage and UM Property Damage Coverage for the following limits which are equal to or lower than my selected Bodily Injury Liability Limits (limits higher than the Bodily Injury Liability Limits may not be selected). I have also selected my option for UM Property Damage Coverage and understand that this coverage cannot be purchased without UM/UIM Bodily Injury Coverage.

*Id*.

The second page of the Option Form lists the Jaramillos' Bodily Injury Liability Coverage Limit as $50,000 per person/$100,000 per occurrence. *Id*. at 2. It set forth options to select among eleven different coverage limits of UM/UIM Bodily Injury Coverage (ranging from $25,000 per person/$50,000 per occurrence to $1,000,000 per person/$1,000,000 per occurrence) and six different coverage limits of UM/UIM Property Damage Coverage. *Id*. In setting forth these various coverage options, the Option Form lists the premium for each level of coverage for each vehicle. *Id*. None of these coverage options were selected on the Option Form signed by Ms. Jaramillo and received by GEICO on April 21, 2009. After receiving the signed Option Form, GEICO deleted the UM/UIM coverage initially selected by the Jaramillos on March 31, 2009, and refunded the prorated UM/UIM premium of $163.23. *See* Ex. A(5), attached to Doc. 35.

On April 22, 2009, GEICO issued a new Policy package to Plaintiffs that contained a revised three-page Endorsement Declarations. *See* Ex. 2 attached to Doc. 38. The revised Endorsement Declarations indicates liability limits of $50,000 per person/$100,000 per

4

occurrence and states "INSURED REJECTS" in the section indicating what UM/UIM coverage had been purchased by the Jaramillos.  *Id*.  In addition, the "Coverage" section of the Endorsement Declarations has a notation that "Coverage applies where a premium or 0.00 is shown for the vehicle."  *Id*.  The Endorsement Declarations shows a blank space in the section listing UM/UIM coverage, as opposed to indicating a premium or 0.00 as it does for each type of other coverage.  *Id*.  The package sent to the Jaramillos on April 22 also included, in a section entitled "Important Messages," the statement that "Coverages and/or limits were changed as you requested or due to state requirements."  *See* Ex. A(4), attached to Doc. 35.  The package also contained a blank UM/UIM Option Form, with identical information to the one initially completed by Ms. Jaramillo, listing coverage options and premiums, that could be used in the event that Plaintiffs chose to reconsider their rejection of UM/UIM coverage.  *Id*.[3]

---

[3] Plaintiffs contend that "[t]he policy form and content submitted by GEICO in its Motion for Summary Judgment differs from the policy document certified as true and accurate by GEICO, previously provided to the Plaintiffs, and attached to Plaintiffs' Complaint.  The discrepancy between what GEICO represented to Plaintiffs as a true, accurate and correct copy of the policy prior to filing of the Complaint [sic], compared to what it now represents as a true, accurate and correct copy of the policy, demonstrates without question that there is a genuine issue of material fact making a grant of summary judgment improper as a matter of law."  Pl. Resp. to Def't. MSJ [Doc. 38] at 3-4.  However, the form purporting to be a certified copy of the Policy, attached as an exhibit to Def't. Mem. in Support of MSJ [Ex. A(1) to Doc. 35] is identical to Ex. A to Plaintiffs' Complaint.  The "discrepancy" appears to stem from the items, such as the blank Option Form, that Defendants included in the April 22, 2009 package that they sent to Plaintiffs and that they included as Exhibit A(4) to Doc. 35.  Plaintiffs do not dispute that they received these items, but rather dispute whether such items constitute part of the Policy.  *See* Pl. Resp. to Def't MSJ at 4-5, ¶¶ 5-6.  Defendants do not contend that Exhibit A(4) represents the certified Policy, and freely admit that the exhibit contains items that are not contained in the certified policy.  *See* Def't. Rep. to Pl. Resp. to MSJ [Doc. 42] at 2 n.2.  Indeed, it would make little sense to have a blank Option Form constitute part of a final policy.  Thus, there is not a dispute of material fact regarding what constitutes a true, accurate, and correct copy of the Policy.  Nonetheless, Plaintiffs' contention does foreshadow an issue at the heart of this case, namely whether Plaintiffs' rejection of UM/UIM coverage was "endorsed, attached, stamped or otherwise made a part of the policy."  13.12.3.9 NMAC.

After GEICO refused to pay Plaintiffs' claim for UM/UIM benefits based on its contention that Plaintiffs had rejected such benefits, Plaintiffs filed suit in New Mexico's First Judicial District Court. The Complaint stated eight causes of action against Defendants, all related to Defendants' refusal to pay UM/UIM benefits: (1) Violation of New Mexico's Unfair Trade Practices Act; (2) Violation of New Mexico's Trade Practices and Frauds Act and the Insurance Code; (3) Claim for UM/UIM Benefits; (4) Breach of the Implied Covenant of Good Faith and Fair Dealing; (5) Breach of Contract; (6) Injunctive Relief; (7) Declaratory Judgment; and (8) Punitive Damages. Complaint, attached as Ex. A to Doc. 2. The Complaint was brought as a potential class action on behalf of:

> All New Mexico residents, who are GEICO insureds, who were injured and presented claims to GEICO, or who GEICO knew or should have known were entitled to present a claim, who have been denied [UM/UIM] coverage or who have not been extended [UM/UIM] coverage with limits in an amount equal to their limits of liability coverage, where GEICO has failed to obtain a valid waiver/rejection of [UM/UIM] coverage with limits equal to the limits of liability coverage.

Complaint at 6-7 ¶ 35.

Defendants timely removed the case to this Court under the provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). *See* Notice of Removal [Doc. 1] at 2-3 ¶ 3. The parties have agreed to submit to the Court the legal and factual issues involving only the Jaramillos' claims prior to proceeding with the class certification process. *See* Amended Scheduling Order [Doc. 33].

## SUMMARY JUDGMENT STANDARD

In cases involving state law claims, the forum state's substantive law governs the analysis of the underlying claims, but federal law determines the propriety of the court's summary judgment ruling. *See Hill v. Allstate Ins. Co.*, 479 F.3d 735, 739 (10th Cir. 2007).

6

"Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Both parties have included legal arguments in their statements of "undisputed material facts," and such legal arguments are disregarded for purposes of determining whether disputes of fact exist. However, the contents of the documents at issue in this case speak for themselves, and their authenticity is not disputed. Thus, there are no disputes as to any material facts in this case, and the Court has the information that it needs to be able to resolve the legal question of whether Plaintiffs' purported rejection of UM/UIM coverage was sufficient.

## ANALYSIS

The New Mexico Supreme Court has held that, in order "to effectuate the policy of expanding UM/UIM coverage, the insurer is required to *meaningfully offer* such coverage and the insured must *knowingly and intelligently act* to reject it before it can be excluded from a policy. *Marckstadt v. Lockheed Martin Corp.*, 147 N.M. 678, 684 (2009) (citing *Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 156 (1990) (emphasis in original).[4] Under New Mexico law, every automobile liability policy issued in the state is now read to contain UM/UIM coverage in an amount equal to liability coverage limits unless an insurer (1) offers the insured UM/UIM

---

[4] With respect to whether a rejection of UM/UIM coverage was knowing and intelligent, the Court looks only to whether Plaintiffs were provided sufficient information to understand what coverage they were being offered and that they were, in fact, rejecting such coverage. Whether Plaintiffs understood the significance of UM/UIM coverage at the time they rejected it is not at issue. *See Vigil v. Rio Grande Ins. Co. of Santa Fe*, 124 N.M. 324, 328-39 (Ct. App. 1997) (The applicable statute does not require an insurer to make a purchaser aware of the importance of UM coverage or the ramifications of rejection before accepting a rejection, the purchaser must only be fully informed of the fact of rejection).

coverage equal to the policy's liability limits, (2) provides information on the premium costs corresponding to the levels of available UM/UIM coverage, (3) obtains a valid written rejection of UM/UIM coverage equal to the liability limits, and (4) meaningly incorporates such a rejection into the policy delivered to the insured. *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 30 (2010). Plaintiffs argue that GEICO has failed to meet these requirements because its waiver form is invalid on its face and misleading, and because GEICO failed to incorporate the purported rejection into the Policy.

      A.      <u>Does Option Form Comply with New Mexico Law?</u>

The *Jordan* Court stated that "[d]espite this Court's repeated pronouncements that an insured's decision to reject UM/UIM coverage must be knowing and intelligent in order to effectuate New Mexico's public policy, these consolidated cases indicate that insurers continue to offer UM/UIM coverage in ways that are not conducive to allowing the insured to make a realistically informed choice." *Jordan*, 2010-NMSC-051, ¶ 20. The *Jordan* Court therefore consolidated three similar cases and resolved them in a single ruling "in order to provide guidance on the technical requirements for valid offers and rejections of UM/UIM coverage." *Id*. at ¶ 13.

Previous rulings on this topic have recognized that "an offer of UM/UIM coverage could, in principle, be so inadequate or misleading as to render a rejection ineffective." *Marckstadt*, 147 N.M. at 684. Therefore, an insurer must now offer an insured UM/UIM coverage in an amount equal to the policy's liability limits and must also provide the corresponding premium charge for that maximum level of UM/UIM coverage. *Jordan*, 2010 NMSC-051 at ¶ 21. The insured must also be provided with the premium costs for any other levels of UM/UIM coverage offered to the insured, including the minimum amount of coverage allowed by NMSA 66-5-

301(A). *Id*. In addition, the insured must be informed that he or she has the right to reject UM/UIM coverage altogether. *Id*. In setting forth these requirements, the *Jordan* Court recognized that "[p]roviding the insured with a menu of coverage options and corresponding premium costs will enable the insured to make an informed decision about the level of UM/UIM coverage he or she wants to purchase and can afford and will minimize uncertainty in litigation with regard to the coverage that the insured has obtained." *Id.*

For a rejection of UM/UIM coverage to be valid, it must not only follow a meaningful offer of coverage to the insured, but it must be in writing. *See id*. at ¶ 18; *Marckstadt*, 147 N.M. at 686. The requirement that a rejection be in writing "furthers the policy of expanding UM/UIM coverage by assuring that the insured is sufficiently informed before rejecting coverage, alerting the insured to the importance of the decision, and providing clear evidence of a decision to reject, reducing litigation after the fact." *Marckstadt*, 147 N.M. at 685-86. While a rejection of UM/UIM coverage must be in writing to be valid, the written rejection need not be signed by the insured. *Id*. at 686.

The Option Form provided to Plaintiffs and signed by Ms. Jaramillo complied with all of the requirements imposed by New Mexico law. The form specified the bodily injury liability limits that Plaintiffs had selected, and clearly offered the opportunity to select UM/UIM coverage in an amount equal to or lower than those selected bodily injury liability limits while also providing premium costs corresponding to each level of coverage. *See* Option Form, attached as Ex. A(2) to Doc. 35. The form meets the requirement that a rejection be made in writing, and, although not required, it is signed by Ms. Jaramillo.

    1. Available Coverage

Plaintiffs do not contend that GEICO did not offer them the option to purchase UM/UIM

coverage or offer a corresponding premium menu.  Instead, they argue that the offer of UM/UIM coverage was unclear and misleading because it appears to offer coverage in limits above Plaintiffs' bodily injury liability limits.  Although Plaintiffs' bodily injury liability limits were $50,000 per person/$100,000 per occurrence, the Option Form included UM/UIM coverage levels and corresponding premiums for levels above that, from $100,000/$200,000 all the way to $1,000,000/$1,000,000.  *See id*.  However, the Option Form explains in plain language to insureds that if they choose to select some level of UM/UIM coverage, they cannot select amounts above their liability coverage limits.  The option box reflecting a decision to select coverage reads, in part, "I select UM/UIM Bodily Injury Coverage and UM Property Damage Coverage for the following limits which are equal to or lower than my selected Bodily Injury Liability Limits (limits higher than the Bodily Injury Liability Limits may not be selected)." *Id*.  Thus, the Option Form explains twice in the same sentence that insureds cannot select UM/UIM coverage in a greater amount than their liability limits.

     Listing higher UM/UIM coverage amounts than an insured may select for a given bodily injury liability level does not create a fatal ambiguity, given the clear language on the Option Form.  In fact, one of the Option Forms at issue in *Jordan* also provided a list of UM/UIM coverage options ranging from $25,000 per person/$50,000 per occurrence to $2,000,000 per person/$2,000,000 per occurrence, even though the bodily injury liability limits of the policy in question were $100,000 per person.  *See Jordan*, 2010-NMSC-051 at ¶ 5.  The *Jordan* Court held that this form enabled the insurance company to meet the requirement that it "offer[] UM/UIM coverage equal to the liability limits in Plaintiffs' policies because the UM/UIM [Option Form] included a menu of coverage options ranging from the statutory minimum up to $2 million, along with a statement informing the insureds that they could 'only purchase

[UM/UIM coverage] up to [the] Bodily Injury Liability...limits.'" *Id*. at ¶ 31. The *Jordan* Court held that the Option Form was insufficient not because it included quotations for UM/UIM coverage higher than liability limits, but because it did not provide the premium costs for each available coverage option, a flaw not present in the Option Form at issue in this case. *See id*. at ¶ 32.

Indeed, providing such information about potential higher coverages and their corresponding premiums seems in keeping with New Mexico courts' goals of providing transparency in pricing and providing insureds with sufficient information to allow them to make an informed choice about their desired level of coverage. An option form that shows insureds what higher levels of UM/UIM coverage would be available at which premiums if they elected higher bodily injury liability limits gives insureds more information about their potential coverage choices and could lead some insureds to increase their liability limits in order to obtain more UM/UIM coverage, which would have the impact of furthering the New Mexico courts' goal of expansive UM/UIM coverage. *See Jordan*, 2010-NMSC-051 at ¶ 15 ("The provision of the maximum possible amount of UM/UIM coverage in every insurance policy is the default rule").

In addition, the provision of premium quotations for additional levels of UM/UIM coverage above liability limits has no apparent connection to Plaintiffs' rejection of <u>all</u> coverage. Plaintiffs selected the box on the first page of the Option Form that elected to reject all coverage and, by definition, had no need to select a level of coverage on the second page. Thus, it is difficult to see how the alleged ambiguity created by noting additional levels of coverage affected Plaintiffs' decision to reject all coverage.

    2. <u>Stacking</u>

Plaintiffs also contend that GEICO's Option Form was deficient because it did not include a discussion of stacked coverage. "Stacking" is a judicially-created doctrine that permits the combining or aggregating of all available UM/UIM coverages for related household members. *See Montano v. Allstate Indem. Co.*, 135 N.M. 681, 682 (2004). Thus, if an insured has UM/UIM coverage on four vehicles, the insured is allowed to "stack" or aggregate the UM/UIM coverage limits on all four of the vehicles if the insured makes a claim under his or her UM/UIM coverage. This is because UM/UIM coverage follows the person, not the vehicle, so that an insured is covered by stacked coverage even if he or she is a pedestrian or a passenger in another vehicle. *See id*. at 684. Therefore, if an insured has four vehicles with $100,000 of UM/UIM coverage on each vehicle, the insured is generally allowed to stack the coverage when making a claim so that he or she has up to $400,000 of UM/UIM coverage. Plaintiffs argue that the Option Form "made no mention of stacking and therefore failed to give the Jaramillos an opportunity to knowingly and intelligently reject, or select, stacked coverages on their multiple vehicles" with the result that, "[w]ithout that information, the Jaramillos were ignorant to the potentially serious consequences regarding the stacked coverage they ultimately, unknowingly, purportedly waived." Pl. Resp. to Def't MSJ [Doc 38] at 23.

Plaintiffs contend that "the New Mexico Supreme Court has mandated that a meaningful offer of coverage requires providing information about the availability of stacking, an insured's ability to waive stacking, and corresponding premium costs associated with the same. *Id*. at 11-12 (citing *Montano*, 135 N.M. at 686-87; *Jordan*, 2010-NMSC-051 at ¶ 21). This contention fundamentally misconstrues the holdings of *Montano* and *Jordan*. *Montano* involved the interpretation of an ambiguous anti-stacking clause in a policy in light of the state's public policy supporting stacking of UM/UIM coverage where multiple premiums have been paid. In coming

12

up with "a solution to the seemingly inherent ambiguities in anti-stacking clauses," the *Montano* Court held that "an insurance company should obtain written rejections of stacking in order to limit its liability based on an anti-stacking provision."  135 N.M. at 686.  *Montano* dealt exclusively with an insurer's attempt to rely on anti-stacking policy language when multiple premiums had been paid by the insured; it has no impact on the requirements for rejection of the statutorily-required offer of UM/UMI coverage in an amount equal to bodily injury liability limits.  The "written rejection" referred to in *Montano* is the rejection an insurance company must obtain to enforce an anti-stacking clause, and the case has no bearing on this one.[5]

To the extent that *Jordan* cites *Montano*, it is not to expand *Montano*'s holding regarding anti-stacking provisions to impose new requirements for rejecting UM/UIM coverage.  The *Jordan* Court cited *Montano*'s requirement that insurance carriers provide insureds with the premium costs for each available level of stacked coverage as an example of striking the balance between freedom of contract and honoring the broad intent of the UM/UIM statute.  2010-NMSC-051 at ¶¶ 23-24.  The *Jordan* Court then sought to strike that same balance in the context of setting requirements for rejecting UM/UIM coverage, finding that "by including premium prices for each available UM/UIM coverage level, insurance carriers meaningfully enable consumers to make a knowing and intelligent purchase or rejection of UM/UIM coverage" and "provid[ing] a list of coverage options with corresponding costs actually enhances freedom of contract because insureds' expectations will be met and they will get exactly what they consciously chose to pay for."  *Id*. at ¶ 24.

---

[5] GEICO has certified that it does not enforce any anti-stacking language with respect to UM/UIM coverage and that it pays stacked UM/UIM benefits in proper cases.  *See* Declaration of Bret Polite, attached as Ex. D to Doc. 42 at 2 ¶ 5.

At no point does *Jordan* mandate or even imply that UM/UIM Option Forms must have a discussion of stacking in order to be valid. This failure to mention a requirement that the Option Form discuss stacking is especially fatal to Plaintiffs' argument in light of *Jordan*'s stated aim "to provide guidance on the technical requirements for valid offers and rejections of UM/UIM coverage." *Id.* at ¶ 13. Such a significant requirement as Plaintiffs seek to impose would not likely be inserted between the lines by the *Jordan* Court, and this Court does not find that *Jordan* imposes such a requirement. Interestingly, the *Jordan* Court characterizes one defendant's method of offering pull-down menus on its website that provide price quotations for each available price option as a "commendable system of offering meaningful choices to its insureds" without any reference to whether the coverage menu discussed stacking. *Id.* at ¶¶ 34-35.

Finally, Plaintiffs contend that the Option Form provided insufficient information because it failed to advise them of their ability to reject or choose lower UM/UIM coverage for one or more of their vehicles while maintaining UM/UIM coverage on their other vehicles, and because the form does not discuss what the net effect of such a selection would be on their overall stacked coverage limits. *See* Pl. Resp. to Def't MSJ [Doc. 38] at 23. They contend that they "could have entirely rejected [UM/UIM] coverage on one or more of their four vehicles, or chosen lower UM/UIM limits on one or more of their four vehicles, or chosen UM/UIM coverage up to the liability limits of one or more of their four vehicles, or made selections in any combination of these choices," and that the failure to inform them of these choices and the impact of these choices on stacked coverage prevented them from making an informed decision regarding coverage. *Id.* at 23 n.8. However, Defendants have presented uncontroverted evidence that, in New Mexico, GEICO offers UM/UIM coverage on a per policy rather than a per vehicle basis, so that if an insured chooses to carry any UM/UIM coverage, the insured is

14

required to select the same level of coverage for each vehicle on the policy, and if an insured rejects UM/UIM coverage, that rejection necessarily applies to all vehicles under the policy. *See* Declaration of Joe Jordan, attached as Ex. E to Doc. 42, at 2 ¶¶ 5-6. The Option Form signed by Ms. Jaramillo reflected Defendants' method of offering UM/UIM coverage in New Mexico. A form presenting the illusory option to select UM/UIM coverage on one vehicle while rejecting it on another would simply have caused confusion rather than alleviating it.

        B.        <u>Did GEICO Meaningfully Incorporate the Rejection into the Policy?</u>

In order for a rejection of UM/UIM coverage to be valid, the New Mexico Administrative Code requires that such rejection "be endorsed, attached, stamped, or otherwise made a part of the policy of bodily injury and property damage insurance." 13.12.3.9 NMAC. This requirement serves the purpose of "ensur[ing] that the insured has affirmative evidence of the extent of coverage" because "[u]pon further reflection, consultation with other individuals, or after merely having an opportunity to review one's policy at home, an individual may well reconsider his or her rejection of [UM/UIM] coverage." *Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 156 (1990). The provision of "affirmative evidence of the rejection of the coverage comports with a policy that any rejection of coverage should be knowingly and intelligently made," and any insured "rejecting such coverage should remain well informed as to that decision." *Id*.

An insured's written rejection need not be physically attached to the policy in order for the waiver to be valid. *Marckstadt*, 147 N.M. at 681. However, the rejection must somehow be meaningfully incorporated into the policy to be valid. Plaintiffs argue that their purported rejection of UM/UIM coverage was invalid because their Policy did not contain an endorsement deleting or altering their UM/UIM coverage and because the Policy contained no attachment

specifying the amount of UM/UIM coverage available and the premiums associated with each option.  Instead, the Policy merely contained a declarations page noting the rejection.

The front of Plaintiffs' Policy consisted of a three-page Endorsement Declarations section.  *See* Ex. 2 attached to Doc. 38.  This Endorsement Declarations section indicates liability limits of $50,000 per person/$100,000 per occurrence and states "INSURED REJECTS" next to the line items for what UM/UIM coverage Plaintiffs were carrying.  *Id*.  In addition, the "Coverage" section of the Endorsement Declarations had a notation that "Coverage applies where a premium or 0.00 is shown for the vehicle."  *Id*.  The Endorsement Declarations remains blank in the section listing UM/UIM coverage as opposed to indicating a premium or 0.00 as it does for each type of other coverage.  *Id*.  The Endorsement Declarations also included, in a section entitled "Important Messages," the statement that "Coverages and/or limits were changed as you requested or due to state requirements."  *See* Ex. A(4), attached to Doc. 35.

Although Plaintiffs contend that a separate endorsement sheet must be attached to the Policy to provide sufficient notice of the rejection, *Jordan* held that incorporating the rejection into a policy by inclusion on the declarations sheet meets the requirement that "[t]he insurance policy delivered to the insureds...expressly state that UM/UIM coverage had been rejected." *Jordan*, 2010-NMSC-51 at ¶ 32.  The *Jordan* Court found that "[a]lthough the declarations pages sent to [plaintiffs] listed the amounts of liability and UM/UIM coverages provided by the policies, 'the pages did not contain specific references to Plaintiffs' rejection of UM/UIM coverage' and therefore did not satisfy 13.12.3.9 NMAC."  *Id*. (citation omitted).  The Court held that the defendants "could have incorporated the rejection into the policy by clearly stating on the declarations pages that UM/UIM coverage equal to the policies' liability limits had been rejected."  *Id*.  This is precisely what Defendants did in this instance, and the statement on the

16

declarations page "clearly and unambiguously call[ed] to the attention of the insured the fact that such coverage has been waived." *Marckstadt*, 147 N.M. at 687 (citation omitted). *See also Romero*, 111 N.M. at 156 ("The rejection [of UM/UIM coverage] must be made a part of the policy *by endorsement on the declarations page*, by attachment of the written rejection to the policy, or by some other means that makes the rejection a part of the policy so as to clearly and unambiguously call to the attention of the insured the fact that such coverage has been waived.") (emphasis added); *Vigil v. Rio Grande Ins. of Santa Fe*, 124 N.M. 324, 327 (Ct. App. 1997) (holding that rejection was made part of the policy because the declarations pages included the statements "UNINSURED MOTORIST COVS REJECTED" and "UNINSURED MOTORISTS COVERAGES HAVE BEEN REJECTED"). Plaintiffs have pointed to no case law to support their contention that a rejection cannot be incorporated into a policy be means of the declarations page alone.

     Plaintiffs argue that GEICO's incorporation of the rejection into the Policy amounts to nothing more than "virtual attachment" and compares the facts of this case to those of *Lucero v. Trujillo*, one of the three consolidated cases decided in *Jordan*. Pl. Resp. to Def't MSJ [Doc. 38] at 19-20. In *Lucero*, the plaintiff's rejection form was completed online. *See Jordan*, 2010-NMSC-051 at ¶ 34. The defendant insurance company argued that it had incorporated the rejection into the policy by means of a short paragraph at the end of the policy that purported to "expressly integrate[]" the insured's application and declarations pages into the policy. *Id*. at ¶ 35. The *Jordan* Court held that "[i]ncorporating an on-line application into an insurance policy via buried language toward the end of a generic forty-nine page policy does not allow for meaningful reconsideration of the decision to reject coverage," especially in light of the fact that the record did not even establish that the insurance company actually delivered the policy and

17

declarations pages to the insured.  *Id*.  In this case, GEICO did not attempt to "virtually attach" the rejection through reference to a buried paragraph; the Endorsement Declarations at the front of the Policy expressly state that coverage has been rejected.  Thus, GEICO did exactly what *Jordan* indicated would have been proper in the *Lucero* case, when the court stated that "[the defendant] should have delivered a policy that expressly alerted [the plaintiff] to the fact that she had rejected a portion of the UM/UIM coverage to which she was entitled."  *Id*.

Plaintiffs also contend that Defendants' notification that UM/UIM coverage had been rejected was insufficient because there was no "attachment to the policy that contains the same or substantially the same information that is contained on the original rejection/selection form."  Pl. Resp. to Def't MSJ [Doc. 38] at 14.  In other words, Plaintiffs argue that some attachment to a policy must contain an explanation of uninsured motorist coverage, a description of available coverages along with the corresponding premium cost, and a notation explaining that the insured is entitled to reject such coverage.  *See id*. at 17-18.  Plaintiffs cite *Marckstadt*, 147 N.M. at 687 for this requirement, but *Marckstadt* simply contains no such holding.  Nor does *Jordan*, which purports to "provide guidance on the technical requirements for valid offers and rejections of UM/UIM coverage."  2010-NMSC-51 at ¶ 13.  When the *Jordan* Court held that the policies in question failed to contain sufficient evidence of rejection, it did so in one instance because the policy did not expressly state the UM/UIM coverage had been rejected, *see id*. at ¶ 32, and did so in another instance because "[n]othing in the application, declarations pages, or policy provided [plaintiff] evidence of her rejection for later reference or reflection."  *Id*. at ¶ 35.  At no point did the *Jordan* Court indicate that an attachment to a policy must contain an explanation of UM/UIM coverage or a list of available coverages and their corresponding costs.  Rather, *Jordan* stressed the importance of incorporating the rejection into the policy so that the insured is alerted

that coverage has been waived so that the insured can reconsider his or her rejection after further reflection. *Id*. at ¶ 18. Such rejection is clear on the face of Plaintiff's Policy through the Endorsement Declarations.

Moreover, Defendants provided Plaintiffs with all of the information that they needed to meaningfully reconsider their decision to reject coverage by including a blank Option Form in the package with the Policy mailed to Plaintiffs. The blank Option Form, just like the one previously used by Plaintiffs to reject coverage, specifically gave Plaintiffs the opportunity to select coverage and laid out all of their coverage options and associated premiums. Plaintiffs argue that "[t]he new [Option Form] that was included in the Jaramillos' policy did not even have a checkmark next to the box indicating that UM/UIM coverage was rejected...so it did nothing to call to the Jaramillos' attention the fact that UM/UIM coverage had been rejected." Pl. Resp. to Def't MSJ [Doc. 38] at 19. However, the point of including the blank Option Form was not to call attention to the fact that coverage had been rejected–that was accomplished through the Endorsement Declarations. Instead, it was to provide Plaintiffs with the opportunity to revisit their choice to reject coverage and to provide them with the premium information necessary to make an informed decision, as contemplated by *Jordan*.

Plaintiffs also cite the pre-*Jordan* decision of *Farmers Ins. Co. v. Chen*, 148 N.M. 151 (Ct. App. 2010) for their contention that some attachment to a policy must contain the same or substantially similar information to the original Option Form in order for a waiver to be valid. However, *Chen* involved a case in which none of the documents attached to the policy clearly stated that the insureds had rejected some amount of UM/UIM coverage and in which the record did not indicate that the insureds had ever been provided with information on the amount of UM/UIM coverage available for purchase and the corresponding premiums. *See Chen*, 148

N.M. at 155. As such, the *Chen* court found that the plaintiffs "were not equipped to understand their selections or to reconsider those selections at a later date." *Id*. *Chen* is distinguishable from the facts of this case because, in this case, Plaintiffs were provided with full information on their coverage options prior to rejection, had the fact of rejection clearly stated on their declarations pages, and had full information on coverage options provided again on the blank Option Form provided in the Policy mailing, such that the requirements set out in *Marckstadt* and *Jordan* were met. Thus, the Court cannot say that the same safeguards that the *Chen* court found necessary under those facts to enable those plaintiffs to reconsider their rejection at a later date are required under the facts of this case.

## CONCLUSION

The Court finds that the Option Form signed by Ms. Jaramillo complies with New Mexico law, that GEICO obtained a valid written rejection of UM/UIM coverage equal to the liability limits, and that GEICO meaningly incorporated the rejection into the Policy delivered to Plaintiffs. Because all of the remaining counts of the Complaint are based on allegations that Defendants improperly failed to pay UM/UIM benefits, and because the Court finds that refusal to pay was proper based on Plaintiffs' valid waiver of such benefits, summary judgment on all counts in favor of Defendants is warranted. **IT IS THEREFORE ORDERED** that Defendants' *Motion for Summary Judgment* [Doc. 34] is GRANTED.

_____
UNITED STATES DISTRICT JUDGE